1
2
3
4
5
6
7
8
9
10

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

11  DIANA K. CHIN,                                No. C-07-1015 CRB

12        Plaintiff,                              **MEMORANDUM AND ORDER**

13   v.

14  MICHAEL J. ASTRUE,

15  Commissioner of Social Security,

16        Defendant.
                                        /
17

18        Plaintiff Diana Chin ("Chin") filed applications for disability insurance benefits

19  ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social

20  Security Act (the "Act"), respectively, on January 21, 2003.  After the Social Security

21  Administration ("SSA") denied Chin's applications on May 15, 2003, she filed a timely

22  request for a hearing before an administrative law judge ("ALJ").  This hearing was held on

23  August 23, 2005 at which Chin testified and was represented by counsel.

24        After considering the evidence described below, the ALJ denied Chin's claim, finding

25  her "not disabled" within the meaning of the Act.  This decision became final when the SSA

26  Appeals Council denied Chin's request for review on December 26, 2006.  Chin now seeks

27  judicial review in this Court under 42 U.S.C. § 405(g).

28

United States District Court
For the Northern District of California

1  For reasons set forth below, the case is REMANDED for further proceedings

2  consistent with this Order.

3  **I. FACTUAL BACKGROUND**

4  **A.     Plaintiff's Disability Claim**

5      Chin alleges disability on the basis of a host of impairments arising from a closed

6  head injury she suffered in a motor vehicle accident on December 5, 2000.  These

7  impairments include loss of peripheral vision, diminished ability to taste, hear and smell,

8  impaired motor skills and a cognitive injury associated with dizziness, insomnia, and

9  depression.  Although Chin took an office position in May 23, 2005, and was working at the

10  time of her administrative hearing, she alleges that this work was performed under "special

11  conditions" and, as such, does not preclude finding her disabled during the period of her

12  employment.

13

14  **B.     Plaintiff's Testimony**

15      At the administrative hearing, Chin claimed that residual impairments prevent her

16  from working.  She explained that her right-side peripheral vision, hearing, and sense of taste

17  and smell remain substantially limited.  (TR at 725-27).  She also described a 40 to 60

18  percent diminution in her physical reaction time and mental acuity, (TR at 731), as well as

19  frequent headaches, cramping, dizziness, and fatigue.  (TR at 727-32).  Chin testified that she

20  now has difficulty with her short-term memory and uses "post notes" and timers to

21  accomplish basic cooking tasks and household chores.  (TR at 726-27).  She further

22  described suffering from serious depression and the inability to sleep for more than three

23  hours a night (TR at 726-27).

24      Chin discussed her duties as an office assistant at an auto body shop, a job she began

25  on May 23, 2005 and held at the time of the administrative hearing.  (TR at 713-15, 722-23).

26  These duties included directing customers, cataloging vehicle information and updating

27  records.  (TR at 715).  Chin described this position as a "temporary" arrangement obtained

28

2

United States District Court
For the Northern District of California

1    through a friend.  (TR at 723).

2        **C.    Medical Evidence**

3            **1.    Treating Psychologist**

4            Chin first saw Dr. Michael D. Shore, her treating psychologist, in the months

5    following her December 2000 motor vehicle accident.  In a report dated March 5, 2001, Dr.

6    Shore detailed the results of a neuropsychological evaluation of Chin he completed in

7    February of the same year.  (TR at 590-95).  Dr. Shore reported that Chin suffered two brain

8    contusions.  The first resulted in right homonymous hemianopsia (a severe diminution in the

9    right visual field of both eyes) as well as a diminished ability to taste and smell.  (TR at

10   590).[1]  The second contusion resulted in an overall loss of energy, vitality, a higher level

11   cognitive function.  (TR at 590).  Dr. Shore was careful to observe that Chin was in the early

12   stages of her recovery, and that further recovery, both in terms of her vision and cognitive

13   processes, was to be expected.  (TR at 593).  At this time, Dr. Shore diagnosed Chin with a

14   cognitive disorder, mild to moderate in severity.  Dr. Shore also observed that Chin's injuries

15   placed her at risk of developing depression.  (TR at 593).  Citing new information gleaned

16   from her records, and from her partner, Dr. Shore changed Chin's cognitive impairment to

17   "Moderate" (from "mild/moderate").  (TR at 643).

18

19           Chin did not see Dr. Shore again until December of 2004.  After retesting, Dr. Shore

20   issued a far less optimistic report of Chin's recovery.  (TR at 635-40).  In this report, dated

21   January 5, 2005, Dr. Shore concluded that Chin's cognitive speed had decreased in

22   significant ways, resulting in reduced memory, poorer focus, and an inability to multi-task.

23   (TR at 636).  Dr. Shore attributed this unexpected result to the onset of major depression

24   (moderate in severity).  (TR at 638).  In particular, Dr. Shore observed that "[m]ost

25   unfortunate of all though has been the development of what I'd thought not then present in

26

27   ─────────────

28       [1]Ms. Chin was diagnosed with homonymous hemianopsia by a vision specialist in
     February of 2001.  (TR at 584).  Dr. Shore was merely reporting this existing diagnosis, which,
     in any event, is not in dispute.

early 2001, but considered to be a significant risk, this being, a serious depression." (TR at 636). Based on these developments, Dr. Shore found Chin to be "entirely occupationally disabled." (TR at 638).

In a letter to Chin's attorney dated August 3, 2005, Dr. Shore reiterated many of his earlier findings and commented more directly on Chin's ability to carry out specific work-related functions. (TR at 693-99). Dr. Shore found that Chin was moderately impaired in fulfilling simple instructions and markedly impaired in fulfilling detailed instructions. (TR at 697). Dr. Shore found that Chin would only be able to stand for 2 hours in an 8 hour workday, and sit for about 6 hours in the same. (TR at 698). Dr. Shore also commented upon the testing results of Chin's consulting doctors, and disagreed with their reports to the extent that they conflicted with his assessment of Chin's occupational capabilities. (TR at 697).

## 2.    Consulting Doctors

On March 10, 2003, Chin was given a neurological examination by Sharon J. Atkinson, M.D. (TR at 597-99). Dr. Atkinson diagnosed Chin with posttraumatic brain syndrome, resulting in a moderate limitation in multitask ability, mild right side weakness, and diminished right side peripheral vision. (TR at 599).

On April 3, 2003, Chin was examined by psychologist Joseph Andrews, Ph.D. (TR at 600-09). Dr. Andrews concluded that Chin exhibited a cognitive disorder (moderate in severity), evidenced by a large discrepancy between verbal IQ and performance IQ. (TR at 607-08). Nevertheless, Chin's intellectual performance on the IQ test was in the low-average range. (TR at 607). Dr. Andrews noted depressive moods, and issued a provisional "rule-out" dysthymic disorder diagnosis.[2] Dr. Andrews concluded that Chin would be able to

---

[2]A "rule out" diagnosis does not literally "rule out" a condition. Rather, it is a provisional diagnosis that the condition may exist and will need to be "ruled out" by future testing. See 1 Attorneys Medical Deskbook § 2:18 (4th ed. 2006) ("The abbreviation 'R/O' means 'rule out' and precedes other possible diagnoses that are not yet excluded by the clinical findings at that time.").

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

follow and understand simple directions, consistently perform simple tasks, learn new tasks and perform complex tasks independently. (TR at 608). Dr. Andrews also observed that Chin will have some difficulty dealing with typical workplace stress. (TR at 608).

On May 17, 2005, Chin was given a complete psychological evaluation by Carol Lewis-Wintrode, Ph.D. (TR at 659-69). Dr. Lewis-Wintrode diagnosed Chin with depression, anxiety, a cognitive disorder and possible alcoholism (in remission). (TR at 668). Dr. Lewis-Wintrode found that Chin's intellectual functioning had diminished since her accident but that she continued to function in the mid-average range. (TR at 667). Based on this assessment, Dr. Lewis-Wintrode concluded that Chin was capable of handling simple and complex tasks (although at a slower pace) and interacting effectively with others. (TR at 669). Dr. Lewis-Wintrode also found that Chin would likely have some difficulty handling workplace stress, and might experience mild difficulties working independently. (TR at 669).

An additional neurological evaluation of Chin was performed by Rebecca Gordan, M.D. on May 19, 2005. (TR at 671-80). Dr. Gordan reported that Chin had recovered from her accident "fairly well physically." (TR at 679). In Dr. Gordan's examination, Chin exhibited a fine motor disturbance of the right hand, and complained of weekly headaches and insomnia. (TR at 676). Despite Chin's loss of peripheral vision, Dr. Gordan concluded that she could move about without additional guidance, and also lift and carry 25 pounds frequently and 50 pounds occasionally. (TR at 679).

## II. STANDARD OF REVIEW

This Court's jurisdiction is limited to determining whether the Social Security Administration's denial of benefits is supported by substantial evidence in the administrative record. 42 U.S.C. § 405(g). A district court may overturn a decision to deny benefits only if it is not supported by substantial evidence or if the decision is based on legal error. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); Magallenes v. Bowen, 881 F.2d 747, 750 (9th

1    Cir. 1989).  The Ninth Circuit defines substantial evidence as "more than a mere scintilla but

2    less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

3    adequate to support a conclusion."  Andrews, 53 F.3d at 1039.  The decision of the ALJ will

4    be upheld if the evidence is "susceptible to more than one rational interpretation."  Id. at

5    1040.

6                                       **III.  DISCUSSION**

7        **A.     The ALJ's Decision**

8            In considering whether a claimant is entitled to benefits, an ALJ conducts a five-step

9    sequential inquiry.  20 C.F.R. § 416.920.  At the first step, the ALJ considers if the claimant

10   is engaged in substantial gainful activity; if the claimant is not engaged in substantial gainful

11   activity, the second step asks if the claimant has a severe impairment (i.e. an impairment that

12   has a significant effect on the claimant's ability to function); if the claimant has a severe

13   impairment, the third step asks if the claimant has a condition which meets or equals the

14   conditions outlined in the Listings of Impairments in Appendix 1 of the Regulations (the

15   "Listings"); if the claimant does not have such a condition, the fourth step calls for a

16   determination of the claimant's "residual functional capacity" and asks if the claimant is

17   capable of performing his past relevant work; if the claimant is not capable of performing his

18   past relevant work, the fifth step asks if, given the claimant's residual functional capacity, he

19   is capable of performing other work which exists in substantial numbers in the national

20   economy.  20 C.F.R. §§ 404.1520(b)-404.1520(f)(1).

21           Here, the ALJ found that Chin had been engaged in substantial gainful activity since

22   taking a position as an office assistant in an auto body shop on May 23, 2005.  Despite

23   evidence of  several "short-lived" jobs, the ALJ found that Chin did not perform substantial

24   gainful activity between the time she filed for disability benefits and May 23, 2005.  For this

25   period, then, the ALJ's analysis moved to step two.  The ALJ determined that Chin's

26   impairments were "severe" within the meaning of the Act and, as such, moved to step three.

**United States District Court**
For the Northern District of California

The ALJ found Chin to suffer from the following impairments: "right homonymous hemianopsia," a cognitive disorder associated with a closed head injury and "a possible dysthymic disorder." After determining that none of these impairments met or equaled Listings criteria, the ALJ then moved to steps four and five. The ALJ described Chin's residual functional capacity as follows:

> at all relevant times, taking into consideration all of her impairments, the claimant has been able to perform simple repetitive medium exertional work, as defined at 20. C.F.R. 404.1567(c) and 416.967(c), with frequent reaching, handling, feeling and fingering with the dominant right upper extremity, and occasional balancing; she cannot work at heights or around hazards, or perform work requiring right peripheral vision or a sense of smell.

(TR at 72).

Based on this residual functional capacity, the ALJ found Chin incapable of performing past relevant work. As is customary, the ALJ relied on the testimony of a vocational expert to determine whether, at step five, Chin was capable of performing other work available in the national economy. See § 20 C.F.R. 404.1566(e). The vocational expert testified that a person with the aforementioned residual functional capacity would be capable of perform the job of "cashier II"as defined by the Dictionary of Occupational Titles # 211.462-010. This is a position available in substantial numbers in the national economy. The ALJ therefore adjudged Chin not disabled within the meaning of the Act for all relevant time periods.

### B.    Finding of a "Possible Dysthymic Disorder"

Chin contends that the ALJ's determination that she suffers from only a "possible dysthymic disorder" is not supported by substantial evidence in the record. Chin's argument has merit.

Dysthymia is a mild to moderate form of depression. 3A Lawyers' Cyclopedia of Personal Injuries and Allied Specialties § 17.53b (5th ed. 2002). The symptoms of dysthymia are the same in kind as those associated with major depression but are less in

7

number, less severe, and more episodic.  Id.  Chin points to Dr. Shore's 2005 diagnosis of major depression (moderate in severity) and Dr. Lewis-Wintrode's 2005 diagnosis of depression (severity not specified) as evidence that she suffers not from a "possible dysthymic disorder," but rather a depression that is both actual and severe.

Notably, Dr. Shore and Dr. Lewis-Wintrode's diagnoses are consistent with, and supported by, the rest of the medical evidence in the record.  In early 2001, Dr. Shore reported that Chin's injuries put her at risk of depression.  In 2003, Dr. Andrews observed Chin's depressive symptoms and provided a provisional, "rule out" diagnosis of a dysthymic disorder.[3]  One month earlier, Dr. Atkinson noted that Chin displayed "a depressed affect." Dr. Gordan's 2005 report did not address Chin's psychological condition but contains nothing to contradict the depression diagnoses of Dr. Shore and Dr. Lewis-Wintrode.

The ALJ's only stated basis for downgrading Dr. Shore and Dr. Lewis-Wintrode's diagnoses to a "possible dysthymic disorder" was Chin's failure to seek treatment for depression.  In the next sentence, however, the ALJ acknowledged that in April of 2005, Chin sought emergency psychiatric care because she feared that she posed a danger to herself.  This was not an isolated instance of treatment.  Dr. Shore's records indicate that he met Chin 17 times during the first half of 2005 for psychotherapeutic purposes.  (TR at 695). These sessions focused on "stabilizing her then failing emotional stability."  (TR at 693).  In short, the record plainly demonstrates that Chin did seek treatment for depression.

Moreover, although there is no record of pre-2005 depression treatment, Chin testified that for significant periods following her 2000 accident she lacked funds to seek any medical treatment.  (TR at 737).  It is well-established that a claimant's failure to seek medical treatment she can not afford does not support an inference that she is malingering or

_____

[3]The Commissioner has mistakenly argued that Dr. Andrews' "rule out" definition literally "ruled-out" a dysthymic disorder.  This reading does not comport with standard medical usage.  See n.2 supra.  This reading is also at odds with Dr. Andrews' records, which take notice of "depressive symptoms."  Further, Dr. Andrews conducted two examinations.  In the first, he "ruled-out" a cognitive disorder; in the second, he diagnosed a cognitive disorder.  (TR at 603, 608).  This strongly indicates that Dr. Andrews was using "rule-out" in its provisional sense.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

otherwise not entitled to disability benefits.  See Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007); Gamble v. Chater, F.3d 319, 321 (9th Cir. 1995).  While the ALJ proffered legitimate reasons to find Chin not credible in regard to her subjective symptoms and claimed inability to perform any work, (see Part C(2)), he did not suggest any reason to disbelieve her claimed lack of funds.  Indeed, the ALJ specifically found that Chin did not engage in substantial gainful activity prior to 2005, observing that during this period, Chin performed only a few "short-lived" jobs.

For these reasons, the ALJ's only basis for his downgraded "possible dysthymic disorder" finding is not valid.  That finding is therefore not supported by substantial evidence in the record.  Indeed, the medical evidence in this case uniformly points toward one conclusion: Chin suffers from depression.

The ALJ's finding of a "possible dysthymic disorder" was in error for a second, more fundamental, reason.  Dr. Shore is Chin's treating psychologist.  The Social Security Act's implementing regulations vest the opinion of a treating medical source with "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(d)(2); see also McAllister v. Sullivan, 888 F.2d 599, 602 n.3 (9th Cir. 1989) (treating psychologists are treating sources within the meaning of Social Security Act).  Even if not accorded controlling weight, a treating source's opinion is "entitled to deference and must be weighed using all of the factors provided in 20 § CFR 404.1527 and § 416.927."  Social Security Ruling 96-2p; Orn, 495 F.3d at 633.

The Ninth Circuit has grafted two additional rules onto these regulatory requirements.  First, the opinion of a treating source that is not contradicted by the opinion of another medical source can only be rejected if the ALJ provides "clear and convincing" reasons supported by substantial evidence in the record.  Orn, 495 F.3d at 632.  Second, even if a treating source's opinion is contradicted by another medical source, it can only be rejected if

the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record.  Id.

Here, Dr. Shore's diagnosis is consistent with each piece of medical evidence in the record.  The ALJ's mistaken finding that Chin failed to seek medical treatment for her depression is simply not substantial, inconsistent evidence.  Further, there is also no indication in the record that Dr. Shore's diagnosis is not supported by accepted clinical and laboratory techniques.  See 20 C.F.R. § 404.1527(d)(2).  Therefore, by rule, Dr. Shore's diagnosis of major depression (moderate in severity) is entitled to controlling weight and the ALJ erred in disregarding it.

Moreover, because there is no contradictory medical evidence in the record, Dr. Shore's diagnosis could only be rejected on the basis of "clear and convincing" reasons supported by substantial evidence.  Orn, 495 F.3d at 632.  As noted, Chin's failure to seek treatment for depression is not a valid, let alone "clear and convincing," reason to reject the diagnosis of Dr. Shore.  Accordingly, the rejection of Dr. Shore's diagnosis also failed to comport with this Circuit's treating physician rules.[4]

In the Social Security context, a district court has three options of proceeding after finding an error or procedural irregularity at the administrative level.  First, the error can be deemed harmless.  See Stout v. Comm'r, 454 F.3d 1050, 1055-56 (9th Cir. 2006).  Second, the court can reverse on the ultimate issue and find the claimant disabled.  See Reddick v. Chater, 157 F.3d 715, 730 (9th Cir. 1998).  Third, the court can remand to the Commissioner for further proceedings.  See Frost v. Barnhart, 314 F.3d 359, 369-70 (9th Cir. 2002).

An error is harmless if it was "inconsequential to the ultimate nondisability

---

[4]As discussed below, the ALJ did proffer specific and legitimate reasons for rejecting Dr. Shore's determination that Chin suffered from a total occupational disability.  See Part III(C)(1).  In particular, the ALJ observed that Dr. Shore's disability opinion was at odds with other substantial evidence in the record indicating improvement over time.  While sufficient for its intended purpose, this reason is not a specific and legitimate, let alone clear and convincing, reason to reject Dr. Shore's medical finding of major depression.  Indeed, this later finding, as noted above, is consistent with every piece of medical evidence in the record.

**United States District Court**
For the Northern District of California

1  determination." Robbins v. Social Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting

2  Stout, 454 F.3d 1050 at 1055-56). Here, the ALJ's failure to credit Dr. Shore's depression

3  diagnosis had a potentially significant impact on steps three and five of the sequential

4  analysis, and therefore cannot be deemed inconsequential.

5          In particular, at step three of the sequential analysis, the ALJ was required to

6  determine whether Chin suffered from a listed impairment or an impairment equating to a

7  listed impairment. Based on his finding of a "possible dysthymic disorder," the ALJ

8  determined that Chin did not satisfy criteria "B" for a Listing level affective disorder. See 20

9  C.F.R., Part 404, Subpart P, Appendix 1 § 12.04. To satisfy the "B" criteria, a claimant must

10  demonstrate two of the following:

11          1.  Marked restriction of activities of daily living; or

12          2. Marked difficulties in maintaining social functioning; or

13          3. Marked difficulties in maintaining concentration, persistence, or pace; or

14          4. Repeated episodes of decompensation, each of extended duration;

15  Id. If properly credited, Dr. Shore's diagnosis of major depression and reporting of

16  associated symptoms bears directly on whether the "B" criteria are satisfied. The ALJ's error

17  was therefore not inconsequential and, as such, not harmless.

18          Similarly, at step five of his analysis, the ALJ determined that, given Chin's residual

19  functional capacity, she could perform work available in substantial numbers in the national

20  economy. However, while the ALJ's assessment of Chin's functional capacity accounted for

21  limitations in her peripheral vision, sense of smell, and ability to work at heights and around

22  hazards, the ALJ found no limitations associated with mental impairments. See Social

23  Security Ruling 86-8 ("The assessment of impairments because of mental disorders includes

24  consideration of such factors as the ability to understand, to carry out and remember

25  instructions, and to respond appropriately to supervision, coworkers, and customary work

26  pressures in a routine setting."). It is therefore likely that Dr. Shore's finding of major

United States District Court
For the Northern District of California

depression, properly credited, would impact the ALJ's assessment of Chin's functional capacity.  This in turn would alter the hypothetical question posed to the vocational expert and potentially his ultimate determination regarding Chin's ability to perform work available in the national economy.  Thus, the ALJ's "possible dysthymic disorder" finding cannot be deemed a harmless error.

Nevertheless, while this Court has the authority to award benefits at this stage, it would not be appropriate to do so in this case.  Such a remedy is proper only in "cases where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits [on remand]."  Varney v. Secretary of HHS, 859 F.2d 1396, 1399 (9th Cir. 1988).  Here, it is far from clear that the ALJ will be required to award Chin benefits, as the mere existence of major depression in no way equates to a disability within the meaning of the Social Security Act.  In other words, while vesting Dr. Shore's diagnosis with proper weight will impact the Commissioner's analysis at steps three and five, it does not mandate an award of benefits.  Consequently, this Court is not in a position to award benefits to Chin.

For these reasons, a remand to the Commissioner for further proceedings is the appropriate remedy.  On remand, the Commissioner shall give Dr. Shore's diagnosis of major depression (moderate in severity) controlling weight.  Based on this diagnosis, the Commissioner shall first determine whether Chin meets criteria "B" for a Listing level affective disorder.  See 20 C.F.R., Part 404, Subpart P, Appendix 1§ 12.04.  Second, the Commissioner shall reassess Chin's residual functional capacity and redetermine whether she is capable of performing work available in substantial numbers in the national economy.

C.    Additional Claims

United States District Court
For the Northern District of California

1    Chin contends that the ALJ made three additional reversible errors.  In these

2    challenges, Chin correctly points to flaws in the ALJ's analysis.  Nevertheless, the ALJ's

3    findings are ultimately supported by substantial evidence in the record and do not contain

4    any fatal legal errors.

5                    **1.        Rejection of Dr. Shore's Opinion**

6    Chin claims that the ALJ improperly rejected Dr. Shore's opinion that she was

7    disabled.  Under controlling Ninth Circuit law, Chin is correct that an ALJ may not reject a

8    treating doctor's opinion on the issue of disability without setting forth sufficient reasons for

9    doing so.  Reddick, 157 F.3d at 725.   If a treating doctor's opinion on the ultimate issue of

10   disability is uncontroverted, the ALJ must provide "clear and convincing" reasons to

11   disregard it.  Id.  If the treating physician's opinion on the ultimate issue is controverted, the

12   ALJ must still provide "specific and legitimate" reasons before rejecting the opinion.  Id.  In

13   either event, the proffered reasons must be supported by substantial evidence in the record.

14   "This can be done by setting out a detailed and thorough summary of the facts and

15   conflicting clinical evidence, stating his interpretation thereof, and making findings.  The

16   ALJ must do more than offer his conclusions.  He must set forth his own interpretations and

17   explain why they, rather than the doctors' are correct."  Reddick, 157 F.3d at 725 (internal

18   citations omitted).  In sum, "the reasons for rejecting a treating doctor's credible opinion on

19   disability are comparable to those required for rejecting a treating doctor's medical opinion."

20   Id.

21   Here, Dr. Shore unquestionably opined on the ultimate issue of disability, finding

22   Chin "entirely occupationally disabled."  This finding, which amounts to a determination that

23   Chin is incapable of performing any work available in substantial numbers in the national

24   economy, is controverted by considerable evidence in the record.  Most notably, the reports

25   of Dr. Andrews, Dr. Lewis-Wintrode, and Dr. Gordan present far more favorable vocational

26   prognoses.  Thus, to reject Dr. Shore's disability opinion, the ALJ had to provide "specific

27

28

United States District Court
For the Northern District of California

and legitimate" reasons supported by substantial evidence in the record.  Although his reasoning contains several notable errors, the ALJ met this burden.

The ALJ's first reason for rejecting Dr. Shore's disability opinion was its inconsistency with an earlier determination that Chin's condition was improving.  This reason is not supported by substantial evidence in the record.  Here, while Dr. Shore did comment upon improvements in Chin's condition, he was referencing improvement from tests he performed on Chin in the months following her near fatal car accident.  In particular, Dr. Shore stated that,

> [w]hile treatment then was of some help in improving balance and gait, and overall mental dexterity [has] improve[d], continued residuals post this event have endured, compromising [Chin's] independence in the community, [her] occupational potential, and medical based vocational disability has been necessarily pursued.

(TR at 641).  Individual statements from medical sources may not be isolated from the "overall diagnostic picture" they form a part of.  See Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001).  Dr. Shore's overall diagnostic picture was one of less than hoped for cognitive improvements, coupled with the onset of major depression and persisting disability.  Properly contextualized, the fact that Dr. Shore acknowledged minor improvements in Chin's condition does not contradict his finding of a complete occupational disability.  See id.

The ALJ's second reason for rejecting Dr. Shore's opinion was its reliance "upon an assessment of the claimant's physical functioning - an area which Dr. Shore is unqualified to assess."  It is true that Dr. Shore took note of Chin's physical functioning.  (TR at 696-98).  Nevertheless, prior reports reveal that Dr. Shore's disability opinion rested exclusively on his assessment of Chin's mental impairments.  (TR at 635-40).  In particular, in his January 5, 2005 report, Dr Shore stated that "[a]t this time the totality of Ms. Chin's condition, brain injury with major depression, leaves her entirely occupationally disabled."  (TR at 638).  To make the basis of his opinion even clearer, Dr. Shore later stated that Chin's "present level of psychological distress by itself is fully occupationally disabling."  (TR at 639) (emphasis

14

added).  Thus, even if Dr. Shore's reliance on Chin's physical functioning is a legitimate

reason to reject his opinion, there is not substantial evidence in the record to support it.

The ALJ's third reason for rejecting Dr. Shore's opinion was that his use of physical

evidence suggested "a certain degree of advocacy on his part."  Of course, this reason is

necessarily undermined by the fact that Dr. Shore did not rely on physical evidence.

Moreover, "[t]he Secretary may not assume that doctors routinely lie in order to help their

patients collect disability benefits."  Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995)

(quoting Ratto v. Secretary, 839 F. Supp. 1415, 1426 (D. Or. 1993)).  An unsupported

suggestion of impropriety is not a legitimate reason to reject a treating psychologist's

opinion.  See id.

Notwithstanding these shortcomings, the ALJ correctly observed that Dr. Shore's

finding of total disability is inconsistent with "other substantial evidence in the record which

indicates improvement rather than deterioration in the claimant's condition over time."

Inconsistent substantial evidence in the record can constitute a specific and legitimate reason

for rejecting a treating doctor's medical opinion.  See 20 C.F.R. § 404.1527(d)(4);

Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  Of particular importance in this

regard is the fact that in May of 2005, Chin began work as an office assistant in an auto body

shop.  This position included significant responsibilities, including the task of reconciling the

shop's past financial records, and generally indicates a level of improvement in Chin's

condition that is inconsistent with Dr. Shore's total disability determination.

Further, Dr. Shore's opinion is at odds with the diagnoses of Dr. Atkinson, Dr.

Andrews, Dr. Lewis-Wintrode, and Dr. Gordan.  While these consulting doctors observed

impairments, their assessments of Chin's residual functional capacity are inconsistent with a

complete occupational disability.  In particular, Dr. Andrews and Dr. Lewis-Wintrode

concluded that Chin would be capable of carrying out simple and even complex tasks and

could interact with others adequately.  Dr. Atkinson found Chin to suffer from only a

15

moderate limitation in multitasking.  After conducting a physical evaluation of Chin, Dr. Gordan concluded that the claimant could carry 25 pounds regularly, 50 pounds occasionally, manipulate push/pull devices and handle foot controls.  Indeed, the consulting doctors' diagnoses are consistent with, and provide support for, the ALJ's ultimate determination that Chin is capable of working as a cashier, a position that is available in substantial numbers in the national economy.  Although the ALJ did not cite to the diagnoses of these doctors explicitly, their opinions do constitute evidence that Chin's condition, to the extent that it was ever disabling, had improved over time.  As such, their opinions can be fairly incorporated into the ALJ's reference to substantial evidence indicating improvement in Chin's condition.

Therefore, the ALJ provided sufficiently specific and legitimate reasons for rejecting Dr. Shore's determination that Chin was totally disabled, and those reasons are supported by substantial evidence in the record.

### 2.    Chin's Credibility

Chin contends that the ALJ committed legal error in his determination that she was not credible.  Ordinary techniques of credibility evaluation apply to disability hearings.  See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  The ALJ is responsible for determining credibility, Andrews, 53 F.3d at 1039, and the ALJ may disregard self serving statements made by claimants if he or she finds them to be incredible on other grounds.  Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  Where a claimant has established an underlying medical impairment reasonably capable of producing subjective symptoms, the ALJ must provide "specific, cogent reasons" for disregarding the claimant's recounting of those symptoms.  Orn, 495 F.3d at 635 (internal citations omitted).  Where, as here, an underlying medical impairment is established and where there is no affirmative evidence that the claimant is a malinger, the ALJ must give "clear and convincing" reasons for rejecting the claimant's testimony.  Id. (internal citations omitted).

In weighing a claimant's credibility, appropriate factors to consider include, the

United States District Court
For the Northern District of California

claimant's reputation for truthfulness, inconsistencies in the claimant's testimony, claimant's engagement in activities inconsistent with a claim of disability, and other ordinary methods of credibility determination. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." Id. at 959.

Here, the ALJ provided a number of clear and convincing reasons for his negative credibility determination and those reasons are supported by substantial evidence in the record. First, the ALJ observed that Chin's testimony regarding completely debilitating symptoms was inconsistent with her continuous efforts to seek employment and ultimate retention of a full-time office position in May of 2005. Chin also testified that she performed regular household chores, cared for a dog, and continued to socialize with others. The ALJ observed that these activities, along with her "articulate, organized, and detail-orientated" behavior at the hearing, undermined Chin's claimed inability to perform work on a regular basis. See Fair, 885 F.2d at 603 (performance of household chores can discredit claim of disabling symptoms); S.S.R. 96-7p (ALJ's personal observations of claimant are relevant to overall evaluation of credibility).

Second, the ALJ found Chin's credibility diminished by her past criminal activity. In particular, following a 2000 DUI conviction, Chin left the state of California without completing the volunteer work and jail time to which she was sentenced. Further, in 2003, Chin pled guilty to felony grand theft for fraudulently billing her former employer for $157,000 of services she never performed. While not the sole basis for the ALJ's credibility determination, Chin's past deceitful criminal conduct was properly deemed probative of her reputation for truthfulness. See Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).

Third, the ALJ found inconsistencies in Chin's testimony and amongst previous statements she made in relation to her claim for disability benefits. For example, the record demonstrates that Chin provided varying reports regarding her educational background.

17

**United States District Court**
For the Northern District of California

There is also evidence that Chin falsely informed a friend that she had been diagnosed with brain cancer.  During the hearing, Chin testified that she was unaware that she was required to pay restitution in relation to her 2003 theft plea, but in her sentencing, Chin conceded that she should be required to pay the money back.

In sum, the ALJ cited clear and convincing reasons for finding Chin's testimony not credible.  Because there is substantial evidence in the record supporting the ALJ's credibility determination, this Court will not "engage in second-guessing." Thomas, 278 F.3d at 959.

### 3.        Work Performed After May 23, 2005

Chin alleges that the ALJ erred in finding office work she performed after May 23, 2005 to constitute "substantial gainful activity" ("SGA") precluding an award of disability benefits for the period of her employment.  Chin's argument is without merit.

A person engaged in SGA is not disabled within the meaning of the Social Security Act.  42 U.S.C. § 423(d)(4)(A).  To constitute SGA, work must involve "significant physical or mental activities" and be "the kind of work usually done for pay or profit."  20 C.F.R. § 404.1572(a),(b).  The primary criterion of substantial gainful activity is wages earned.  20 C.F.R. § 404.1574(a)(1) ("Generally, if you worked for substantial earnings, we will find that you are able to do substantial gainful activity.").  Here, there is no question that Chin's $800 weekly salary vastly exceeded the amount required for SGA.  See 20 C.F.R § 404.1574(b)(2).  There is also no dispute that Chin's duties of directing customers, handling paperwork and reconciling financial records entailed significant physical and mental activities and constituted the type of work usually done for profit.

Chin's sole argument is that her work was performed under "special conditions" within the meaning of 20 C.F.R. § 404.1573(c) and that it therefore does not constitute SGA.  This argument rests on a misreading of the applicable regulations, which provide that "[i]f your work is done under special conditions, [the Commissioner] may find that it does not show that you have the ability to do substantial gainful activity."  20 C.F.R. § 404.1573(c);

20 C.F.R. § 416.973 (emphasis added).  Put another way, "work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level."  Id. (emphasis added).  Thus, even if he found Chin's work to be performed under special conditions, the ALJ was not bound to find her incapable of performing SGA.

In any event, the ALJ determined that Chin's work was not performed under special conditions, and his finding is supported by substantial evidence in the record.  In particular, the record contains no evidence that Chin was provided with special equipment or given special duties.  Chin did testify that the job was only a temporary arrangement for a friend who permitted her to miss significant time and take daily naps in the office.  But as the ALJ observed, Chin's significant salary bellies her characterization of the position.  Further, the ALJ appropriately found Chin's testimony not credible, and without this testimony, there is virtually no evidence in the record of special conditions.

Accordingly, the ALJ did not err in finding work performed by Chin after May 23, 2005 to constitute SGA.  If after appropriately accounting for Chin's depression on remand, the Commissioner determines that Chin is disabled within the meaning of the Social Security Act, disability benefits are therefore precluded for the period of her employment commencing on May 23, 2005.

//

//

//

//

//

//

//

//

# IV.  CONCLUSION

Because the ALJ failed to properly credit Dr. Shore's diagnosis of major depression, this case is REMANDED for a determination of (1) whether Chin's impairments meet the listing criteria for an affective disorder, and (2) whether Chin's residual functional capacity precludes her from performing work available in substantial numbers in the national economy.  The ruling of the Commissioner is affirmed in all other respects.

**IT IS SO ORDERED.**

Dated: October 31, 2007

_____
CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE